# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| SHARON J. PERLMAN | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 06 C 5670 |
| | ) | |
| COOK COUNTY BOARD OF | ) | |
| COMMISSIONERS, et al., | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Sharon Perlman, the former Chief of Dental Services for the Cook County

Department of Public Health ("CCDPH"), sued the Cook County Board of Commissioners,

Stephen Martin, CCDPH's Chief Operating Officer, and Timothy Egan, Hearing Officer for the

Bureau of Human Resources for Cook County. According to Dr. Perlman, her termination from

CCDPH violated state and federal law because the defendants deprived her of a property interest

without procedural due process and violated the *Shakman* decree, which prohibits the City of

Chicago from considering political affiliation and activities when making employment decisions.

The defendants seek to dismiss Dr. Perlman's complaint pursuant to Rule 12(b)(1) and (6). For

the following reasons, the motion is denied.

## I. Background

The following facts are drawn from Dr. Perlman's complaint and are accepted as true for

the purposes of the motion to dismiss.

### A. The Parties

The CCDPH is a county agency responsible for providing health care services for

residents of Cook County. Plaintiff Sharon Perlman is the former Chief of Dental Services for

the CCDPH. Defendant Cook County Board of Commissioners is the legislative arm of Cook County government. Defendant Stephen Martin is the Chief Operating Officer of CCDPH and has been sued in his official capacity. Defendant Timothy Egan is a Hearing Officer for the Bureau of Human Resources of Cook County and has been sued in his official capacity.

**B.      Dr. Perlman's Employment at the CCDPH**

Dr. Perlman began working for the CCDPH in 1995, and served as the Chief of Dental Services for the CCDPH through April 2006. From 1995 through 2002, Dr. Perlman's position was administrative, as opposed to clinical, in nature, and she reported to Dr. Karen Scott, the Director of CCDPH. During that time period, Dr. Perlman received high job performance evaluations.

In 2002, Dr. Martin became the Chief Operating Officer of the CCDPH. Soon afterwards, he lowered Dr. Perlman's position in the administrative hierarchy and told  Dr. Perlman "I inherited you." In 2004, Dr. Martin began to discuss altering the duties and responsibilities of Dr. Perlman's position. He gave Dr. Perlman a list of new duties which gave her less desirable administrative responsibilities but no clinical responsibilities. In 2005, Dr. Martin gave Dr. Perlman a performance evaluation which rated her work as "good" or "very good" in each category.

Later that year, Dr. Martin asked Dr. Perlman to list clinical dental procedures that she could perform without additional training. She listed 34 procedures she could perform without additional training and specified additional training which would be of assistance. In June of 2005, Dr. Martin asked Dr. Perlman to spend several days per week performing clinical duties at

a dental clinic. Dr. Martin told her not to pursue additional training, but Dr. Perlman nevertheless participated in an informal retraining by observing another dentist at the clinic.

At that point, Dr. Perlman began spending all of her working hours at the dental clinic. In March 2006, Dr. Martin sent Dr. Perlman a letter to indicate that the CCDPH wanted her to spend approximately 75% of her time at the dental clinic and asked whether she had received any additional training as they had previously discussed. Dr. Perlman said she had not pursued additional formal training because he had told her not to do so, but that she remained willing to do so.

On April 21, 2006, Dr. Perlman met with Dr. Martin and another employee. During this meeting, Dr. Martin outlined some of the problems they had encountered with Dr. Perlman's work and terminated her employment. Dr. Perlman states that she did not receive prior notice or warning. At the meeting, Dr. Martin told Dr. Perlman that she was being terminated because she did not take initiative in clinical training and was not qualified to spend over 50% of her time on direct patient care. Dr. Perlman responded by stating that she had been spending 100% of her time providing patient care and working in a clinical setting. Dr. Martin then ended the meeting and told Dr. Perlman to leave the premises that day.

### C. Dr. Perlman's Grievance

Dr. Perlman filed a timely grievance of her termination and was given a termination hearing before Hearing Officer Tim Egan of the Cook County Bureau of Human Resources on August 1, 2006. Dr. Perlman was allowed to present witnesses and evidence at the hearing, and her former employer, Dr. Martin, and her lawyer attended. At the hearing, Dr. Perlman was denied the use of a court reporter to transcribe the proceedings, though she offered to pay for the

expense herself. She also requested that two co-worker witnesses be given time off to testify on her behalf. Dr. Martin said that they would need to take personal time to participate. Dr. Perlman claimed that the potential witnesses were too fearful of retaliation by superiors to testify. According to Dr. Perlman, Dr. Martin did not present any evidence supporting the decision to terminate her employment.

In September of 2006, Mr. Egan released his decision and findings. In his decision, Mr. Egan stated that "[m]anagement has the right to change the role and responsibility of the Grievant. Sufficient time was given for the Grievant to conform to the new direction of the department but her efforts did not meet Management's expectation. The grievance is denied."

### D.      The CCDPH's Employee Manual

The CCDPH's Employee Manual sets forth the procedures and policies for termination of employees. (Compl. Attach. ¶ 26-28.) Under "involuntary" termination, the manual states that "[a]n employee may be terminated for cause under the Disciplinary Action Policy and Procedures" and "[a]n employee may be placed on layoff for economic or operational reasons when a reduction of work force is necessary. The agency is required to give the employee two weeks notice prior to dismissal."

The Disciplinary Action Policy and Procedure also outlines progressive steps which occur prior to involuntary termination, beginning with a verbal reprimand and ending with discharge. At the fourth step, the manual states that the "immediate supervisor or division or department director has the authority to recommend the suspension for than [sic] thirty days or discharge of employee, subject to review and approval by the Director and President of the County Board." Employees are entitled to have a representative present at any part of the Disciplinary Action.

## II.     Discussion

Dr. Perlman contends that her discharge violates her federal due process rights (Count I), the *Shakman* consent decree (Count II), and is actionable under state law (Counts III, IV, and V). The defendants seek to dismiss the federal claims, arguing that the existence of a state court remedy means her due process claim fails as a matter of law.  They also contend that Ms. Perlman cannot state a claim under the First Amendment since the court lacks jurisdiction and, in any event, she has not adequately pleaded that her discharge was based on her political affiliation.  Finally, they assert that if the court dismisses the federal claims, it should decline to exercise supplemental jurisdiction over the state law claims.  As discussed below, the court finds that Ms. Perlman's federal claims survive the motion to dismiss, so the motion to dismiss is denied in its entirety.

### A.     Standard for Rule 12(b)(1) & Rule 12(b)(6) Motions to Dismiss

In ruling on a Rule 12(b)(1) motion to dismiss, when a defendant challenges the sufficiency of the allegations regarding subject matter jurisdiction, the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *United Transp. Union v. Gateway Western Ry. Co.*, 78 F.3d 1208 (7th Cir. 1996).  In turn, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must assume the truth of all facts alleged in the complaint, construing the allegations liberally and viewing them in the light most favorable to the plaintiff. *McMath v. City of Gary*, 976 F.2d 1026, 1031 (7th Cir. 1992).  With both a Rule 12(b)(1) and 12(b)(6) motion to dismiss, dismissal is proper if it appears beyond doubt that the plaintiff cannot prove any set of facts consistent with the pleadings that would entitle her to the relief requested. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

## B.    Procedural Due Process (Count I)

To show that the defendants deprived her of a property interest without due process, a plaintiff must allege that she had a property interest and was deprived of this interest without due process of law. *Phelan v. City of Chicago*, 347 F.3d 679, 681 (7th Cir. 2003). A property interest exists if an independent source such as state law secures certain benefits or there is a "clearly implied promise of continued benefit." *Id*. Here, the defendants have not contested Dr. Perlman's property interest in her employment, so the court will assume for the purposes of this motion that she does have such an interest.

The court must next determine if Dr. Perlman's allegations show that the process given to her satisfies due process. *Id*.; *Contreras v. City of Chicago*, 920 F.Supp. 1370, 1393 (N.D. Ill. 1996). At its core, due process requires an opportunity to be heard "at a meaningful time and in a meaningful manner." *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976). Due process is a "flexible concept that varies with the particular situation," so the amount of process necessary in any particular situation is a fact specific inquiry. *See Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

Generally, "some form" of pre-termination hearing is necessary for public employees who are terminated. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). During a pre-termination hearing, an employer should provide "(1) oral or written notice of the charges; (2) an explanation of the employer's evidence; and (3) an opportunity for the employee to tell [her] side of the story." *Wainscott v. Henry*, 315 F.3d 844, 852 (7th Cir. 2003).

The pre-termination hearing, however, need not be a fully evidentiary hearing or formal in nature. *Loudermill*, 470 U.S. at 545. Instead, the scope and type of pre-termination hearing

required depends on the nature of the post-termination procedures provided to the plaintiff. *Berryhill v. Illinois Toll Highway Auth.*, No. 02 C 2062, 2003 WL 115245, at *2 (N.D. Ill. Jan. 10, 2003). In other words, a pre-termination hearing may provide notice of the charges and an informal opportunity to respond and still be constitutional if the employer also provides a more elaborate post-termination hearing structure. *Id.*

Post-termination remedies should be characterized by promptness and an ability to return the plaintiff to her rightful position. *Baird v. Bd. of Educ. for Warren Cmty. Unit Sch. Dist. No. 205*, 389 F.3d 685, 692 (7th Cir. 2004). Process offered at a post-termination hearing may include representation by counsel, pre-hearing discovery, the ability to challenge evidence and cross-examine witnesses, and the ability to present evidence and witnesses. *See, e.g., Powers v. Richards*, No. 04-3024, 2006 WL 1749611, at *5 (C.D. Ill. June 20, 2006).

Here, Dr. Perlman argues that the defendants deprived her of her property interest in employment without procedural due process by denying her a constitutionally sufficient pre-termination hearing. The defendants disagree, contend that Dr. Perlman's allegations show that the post-termination hearing by itself provided the requisite procedural due process and that the existence of other remedies arising under state law mean that she has pleaded herself out of court.

A pre-termination hearing is not necessary when it is impractical to provide one. *Gilbert v. Homar*, 520 U.S. 924, 930 (1997). Dr. Perlman alleges that her termination was premeditated and that it would have been possible to provide her with a full pre-termination hearing. She also contends that the presence of state law remedies is irrelevant, as she did not receive adequate pre-termination process.

The existence of an adequate state remedy can doom a procedural due process claim.

*Veterans Legal Defense Fund v. Schwartz*, 330 F.3d 937, 941 (2003). A state post-deprivation remedy is adequate unless it can "readily be characterized as inadequate to the point that it is meaningless or nonexistent and, thus, in no way can be said to provide the due process relief guaranteed under the fourteenth amendment." *Easter House v. Felder*, 910 F.2d 1387, 1406 (7th Cir. 1990). According to the defendants, Dr. Perlman can pursue a variety of state law remedies so her § 1983 procedural due process claim fails as a matter of law.

The court disagrees, as Dr. Perlman has challenged the adequacy of both her pre-termination and post-deprivation process. The Seventh Circuit has held that a state law breach of contract action is not an adequate post-termination remedy for a terminated employee who was only afforded a limited pre-termination hearing. *Baird v. Board of Educ. for Warren Unit Sch. Dist.*, 389 F.3d 685, 692 (7th Cir. 2004). Because Dr. Perlman contends that her pre-deprivation hearing did not provide her with the necessary procedural due process, the fact that she could pursue a state court action does not bar her from seeking relief under § 1983.

Dr. Perlman's argument regarding the adequacy of her pre-deprivation hearing also means that the defendants's citation to *Edelstein v. Cook County* is inapposite. *See* No. 05 C 3563, 2006 WL 83444 (N.D. Ill. Jan. 10, 2006). In that case, the court granted a motion to dismiss based on the existence of state law remedies because the plaintiff had full pre-termination and post-deprivation hearings. *Id*. at *2. Here, however, the parties dispute (among other things) whether Dr. Perlman received a constitutionally adequate pre-deprivation hearing. Thus, the *Edelstein* decision does not support dismissal of Dr. Perlman's complaint based on the presence of adequate state law remedies and the defendants' motion to dismiss Dr. Perlman's procedural due process claim is denied.

**B.      First Amendment (Count II)**

The defendants contend that Dr. Perlman's First Amendment claim should be dismissed

for lack of jurisdiction or, alternatively, on the merits.  The court begins with the jurisdictional

argument, which is based on the *Shakman* consent decree.  This decree, among other things,

prohibits Cook County from considering political affiliation and activities when making

employment decisions.  *Shakman v. Dunne*, 829 F.2d 1387 (7th Cir. 1987); *Shakman v. City of*

*Chicago*, 426 F.3d 925 (7th Cir. 2005).  According to Dr. Perlman, her termination violates the

*Shakman* consent decree because it was politically motivated.  In response, the defendants argue

that the court lacks jurisdiction to consider Dr. Perlman's *Shakman* argument because only the

court overseeing the consent decree can consider claims that its order has been violated.

It is true that a judge may not modify a consent decree entered by another judge.

*Camardo v. City of Chicago*, No. 84 C 3514, 1985 WL 1856 at *3 (N.D. Ill.  Jun. 18, 1985).

However, a plaintiff may sue to vindicate a right established by the *Shakman* consent decree

because such an action does not seek to modify the *Shakman* decree.  *See id*. ("To the extent that

plaintiff's complaint is an independent action based on the city's policy of exempting DOSS

ward superintendents from constitutional protection against politically motivated employment

actions, the *Shakman* order presents no jurisdictional bar to this suit").  Since Dr. Perlman's suit

does not seek to modify the *Shakman* decree, it is properly before this court, so the defendants'

jurisdictional argument fails.

Their merits argument fails as well, as Dr. Perlman has alleged that her termination was

politically motivated.  Federal courts require only notice pleading, so Dr. Perlman need not

provide factual details in her complaint.  *See Kolupa v. Roselle Park District*, 438 F.3d 713, 715

(7th Cir. 2006) ("[a]ny decision declaring 'this complaint is deficient because it does not allege X' is a candidate for summary reversal, unless X is on the list in Fed.R.Civ.P. 9(b)"); *Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005) ("[a]ny district judge (for that matter, any defendant) tempted to write 'this complaint is deficient because it does not contain . . .' should stop and think: What rule of law requires a complaint to contain that allegation?"). Thus, the defendants' argument that Dr. Perlman's complaint fails because it is "completely barren of any allegations" regarding her political affiliation and how it led to her termination, Motion at 5, is simply incorrect. The defendants' motion to dismiss Dr. Perlman's First Amendment claim is thus denied.

## III.    Conclusion

The defendants' motion to dismiss Dr. Perlman's federal claims [#24] is denied, so their request for this court to relinquish supplemental jurisdiction over her state law claims is also denied.


DATE:   May 2, 2007                            _____
                                               Blanche M. Manning
                                               United States District Judge